IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| ALFONZA SIMMONS,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICER CRAIG SMITH,<br><br>Defendant. | ) | Civil Action No. 3:09-1176-HMH-JRM<br><br><br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, Alfonza Simmons, filed this action on May 4, 2009.[1] At the time he filed this action, he was represented by counsel. Plaintiff alleges violations of his constitutional rights pursuant to 42 U.S.C. § 1983 ("§ 1983") and also alleges state law claims under South Carolina law.[2] Defendant is Officer Craig Smith, a former employee of the Town of Estill Police Department. Defendant filed a motion for summary judgment on November 8, 2011. A hearing was held before the undersigned on April 23, 2012, at which time it was clarified that Plaintiff was proceeding pro se.[3] At the hearing, Plaintiff was given written notice (Doc. 73) and advised, pursuant to Roseboro

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2) DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

[2]Defendant previously filed a motion to dismiss (Doc. 21), which was denied by the Honorable Henry M. Herlong, Jr., Senior United States District Judge, on December 13, 2010 (Doc. 39).

[3]At the time he filed this action, Plaintiff was represented by attorneys Glenn Walters and R. Bentz Kirby of the Glenn Walters Law Firm. On November 19, 2009, the undersigned granted Glenn Walters' motion to be relieved as counsel. Doc. 14. Attorney William Gary White, III ("White") filed a notice of appearance on January 8, 2010 (Doc. 18), and the motion of R. Bentz Kirby to be relieved was granted on June 29, 2010 (Doc. 27). On March 10, 2011, attorney Ian McVey

(continued...)

v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment could result in the dismissal of his complaint. Plaintiff filed a response in opposition to Defendant's motion for summary judgment on May 25, 2012.

**STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. While the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the

[3](...continued)
("McVey") was appointed by the Supreme Court of South Carolina to protect the interests of White's clients as White was placed under a ninety-day suspension. Doc. 47. McVey filed a motion to stay this action, which was granted. See Docs. 49, 50. A hearing was held before the undersigned on May 20, 2011, at which time it was noted that the stay was lifted and that Plaintiff was proceeding pro se. See Doc. 55. On August 24, 2011, the Supreme Court of South Carolina terminated the appointment of McVey. See Docs. 60.

development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## DISCUSSION

Plaintiff claims that on May 15, 2006, he was home with his wife and children, he asked his children to leave, and he called the police when the children did not leave. A police officer[4] came to Plaintiff's home in response to the call, took Plaintiff and his wife to the state magistrate, who let Plaintiff and his wife go. On May 16, 2006,[5] Defendant went to Plaintiff's home again and placed Plaintiff under arrest for Criminal Domestic Violence ("CDV"), third offense. Plaintiff states he had no prior CDV conviction(s). The arrest was made without a warrant. Plaintiff alleges that Defendant grabbed him in a rude and insolent manner causing him, among other things, physical pain. He provides that the Hampton County Solicitor remanded the CDV, third offense, charge to the Town of Estill court and the charge was dismissed. Complaint, Paras. 5-8.

Plaintiff alleges that: (1) his Fourth and Fourteenth Amendment rights were violated because Defendant seized him without probable cause; (2) Defendant falsely arrested him; (3) he was maliciously prosecuted; (4) Defendant's actions constituted battery; and (5) Defendant violated

---

[4]In his Complaint, Plaintiff asserts that Defendant came to his house. Complaint, Para. 6. In his memorandum in opposition to summary judgment, he states the officer was Alfonzo Smart. Plaintiff's Opp. Mem. at 1.

[5]In his Complaint, Plaintiff stated that the event in question occurred the day after May 6, 2006 (the date he asserted he called the police because his children would not leave his home). In his memorandum in opposition to summary judgment, Plaintiff clarifies that the alleged incident occurred on May 16, 2006 (the day after he called the police on May 15, 2006).

Plaintiff's rights under the First and Fourteenth Amendment as to his right to free speech and to criticize Defendant. Defendant contends that he is entitled to summary judgment because: (1) he had probable cause to arrest Plaintiff; (2) the minimal force used to arrest Plaintiff was justified; (3) no First Amendment right of Plaintiff was violated; (4) he is entitled to qualified immunity; (5) he is entitled to summary judgment as to all state law claims in that he is a state officer and is not a proper party to any cause of action brought under the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. §§ 15-78-10, et seq. ; (6) Plaintiff's state law claims are time barred by the applicable statute of limitations; (7) there is no indication that he acted outside the scope of the common law privilege to use the force necessary to take an arrestee into custody such that Plaintiff's battery claim fails; (8) he is entitled to summary judgment as to any South Carolina false arrest/false imprisonment claim because the arrest of Plaintiff was valid on several grounds; and (9) any claim for malicious prosecution under South Carolina law fails because Plaintiff has not shown malice or a want of probable cause.

## I. Claims Under § 1983

Plaintiff asserts claims, pursuant to § 1983, that his constitutional rights were violated, as discussed below.

### A. False Arrest/Imprisonment

Plaintiff appears to allege that his Fourth and Fourteenth Amendment rights were violated because he was seized without probable cause and Defendant falsely arrested him. Defendant argues that Plaintiff fails to show that his constitutional rights were violated because he had probable cause to arrest Plaintiff. In his opposition memorandum, Plaintiff appears to argue that

there was no probable cause because there was no sign of violence and he was not being aggressive in any manner.

Section 1983 actions premised on alleged false arrest and/or false imprisonment claims are analyzed as unreasonable seizures under the Fourth Amendment. See, e.g., Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002)(recognizing that a plaintiff alleging a § 1983 false arrest claim needs to show that the officer decided to arrest him without probable cause to establish an unreasonable seizure under the Fourth Amendment); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001)(claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment").

"The Fourth Amendment is not violated by an arrest based on probable cause." Graham v. Connor, 490 U.S. 386, 396 (1989). A warrantless arrest is valid if the arresting officer has probable cause to believe the suspect has committed an offense, and the officer's decision that probable cause is present is reviewed under a totality of the circumstances test. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause exists when the facts and circumstances within an officer's knowledge are "sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). While probable cause demands "more than a mere suspicion, ... evidence sufficient to convict is not required." Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996)(citing Wong Sun v. United States, 371 U.S. 471, 479 (1963)). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." Torchinsky v. Siwinsky, 942 F.2d 257, 264 (4th Cir. 1991)(citation omitted).

In his affidavit, Defendant presents the information which led him to arrest Plaintiff. Defendant states that on May 16, 2006, he was dispatched to a domestic disturbance at an address

approximately five or six houses down from the Police Department. As he left the Department and headed towards the address, he saw a female running barefoot in a nightgown who was screaming and waiving for him to stop. Defendant stopped and identified Ms. Simmons as the 911 caller who reported that her husband threatened to kill her. She was hysterical and crying and advised that she was separated from her husband and he was living elsewhere. Ms Simmons reported that she locked her door with the deadbolt the night prior, and her husband arrived at her home shortly before 7:00 a.m. the next morning and demanded entry. Ms. Simmons stated that her husband discovered the deadbolt was locked, became angry, began banging on the door, threatened her, used a screwdriver to pry open the door, and confronted her in her home. Ms. Simmons reported that her husband threatened to hit her several times as she moved from room to room to get away from him, and told Defendant that her husband threatened her with a tool. Defendant's Aff., Para. 6.

Ms. Simmons reported a past history of domestic violence. Defendant states he was independently aware of a previous domestic violence call in which Plaintiff assaulted Ms. Simmons and charges were brought. Defendant's Aff., Para. 6.

Defendant states that after interviewing Ms. Simmons, he traveled into the driveway and met an adult relative, who Defendant believes was Ms. Simmons' son. The son was upset about Plaintiff's treatment of Ms. Simmons and the son said he was tired of Plaintiff "putting his hands" on him and on Ms. Simmons. Defendant's Aff., Para. 6.

Defendant states he observed that the door had been forced open with pry marks along the side of the door. Plaintiff exited a bedroom in a highly agitated state and was screaming and yelling profanities. He said she (Ms. Simmons) was going "to get hers." Defendant asked Plaintiff if he was

threatening Ms. Simmons and Plaintiff replied "Yeah, I told her what would happen if she locked the door against me again." Defendant's Aff., Para. 7.

Defendant states that Plaintiff refused to follow directives to calm down and cease threatening his estranged wife, Plaintiff ignored Defendant and advanced toward Ms. Simmons, Defendant asked Ms. Simmons if she felt that Plaintiff was going to do something to her, and she replied that she did. After several warnings, Defendant placed Plaintiff under arrest and did a frisk search for weapons, at which time he discovered a screwdriver inside Plaintiff's right back pocket. Defendant's Aff., Paras. 7-8.

Defendant issued a ticket for the charge of CDV in violation of S.C. Code Ann. § 16-25-20.[6] See Defendant's Aff., Ex. B (Uniform Traffic Ticket). On the booking report it was noted by the booking officer that the charge was CDV, second. As there were no convictions upon Plaintiff's prior CDV charges (although Plaintiff had convictions for assault), Deputy Solicitor Powell of the Fourteenth Judicial Circuit Solicitor's Office remanded the case to Magistrate's Court as a CDV, first offense. See Defendant's Aff, Ex. F (Solicitor's Remand).

South Carolina Magistrate Bill Weir, who heard the CDV charge against Plaintiff, is now deceased. During the pendency of Plaintiff's CDV charge, Defendant took a job with another police agency. Defendant states that, through inadvertence, he was not notified by the Town of Estill Clerk of the date and time of trial. See Defendant's Aff., Para. 10.

A hearing was held before Magistrate Weir. During the hearing, Ms. Simmons stated that she was separated from Plaintiff at the time of the incident, Plaintiff used a tool to pry the door open,

[6]This statute makes it unlawful to harm or to offer or attempt to harm, with apparent present ability, one's household member. S.C. Code Ann. § 16-25-20. "Household member" includes a former spouse and people who have children in common. S.C. Code Ann § 16-25-10.

Plaintiff had a history of domestic violence and gave her beatings, on the date of his arrest he came at her with a hammer, and she called the police. Magistrate Weir ordered Plaintiff to stay away from Ms. Simmons, suggested that she file for divorce, but declined to find Plaintiff guilty of CDV. Hearing Transcript 2-5 (Doc. 67-6).

Defendant submitted an affidavit from Lieutenant Colonel William McNeil Baxley, Jr. ("Baxley"), who Plaintiff's counsel retained as a police expert. Baxley reviewed the evidence in this case and he opines that under South Carolina law, Defendant was obligated to effect an arrest based on the evidence in this matter pursuant to South Carolina law (CDV statutes). He believes that Defendant had probable cause to arrest Plaintiff. Baxley Aff.

Here, the facts and circumstances within the knowledge of Defendant were sufficient to warrant a prudent man to believe that Plaintiff committed or was committing an offense. Plaintiff does not dispute that his estranged wife called the police. Although Plaintiff claims that Ms. Simmons made false domestic violence charges in the past that were dropped (he has presented no evidence to support this), he has not disputed that Ms. Simmons reported to Defendant that she was being threatened by Plaintiff. When Defendant arrived at Ms. Simmons' home, he noted that the door had been pried open. Defendant observed Plaintiff cursing and using threatening language toward Ms. Simmons.

B. Malicious Prosecution

Plaintiff alleges that Defendant caused Plaintiff to be prosecuted for the crime of CDV, third offense, and then the charge of CDV, first offense, maliciously and without probable cause. Defendant contends that he charged Plaintiff for CDV (without any reference to what number offense it was), and appears to argue that this claim fails because Plaintiff fails to show a lack of probable cause.

To prevail on a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must show that: (1) the defendant initiated or maintained a criminal proceeding; (2) the criminal proceeding terminated in the plaintiff's favor; (3) the proceeding was not supported by probable cause; and (4) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. See Lambert v. Williams, 223 F.3d 257, 260-262 (4th Cir. 2000)(observing that a "malicious prosecution" claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates the common law malicious prosecution tort elements except for malice); see also Brooks v. City of Winston-Salem, 85 F.3d 178, 183-184 (4th Cir. 1996). Here, Plaintiff's malicious prosecution claim fails because he has not shown a lack of probable cause, as discussed above. The issue of whether the charge should have been CDV, first, second, or third is an administrative function. See Baxley Aff., Para. 19. Any error was rectified prior to the hearing on Plaintiff's charge.

C. Excessive Force

In his motion for summary judgment, Defendant contends that Plaintiff fails to show that excessive force was used against him in violation of his constitutional rights because the only act alleged was that of handcuffing Plaintiff in the course of taking him into custody which does not constitute excessive force because Plaintiff did not allege any injury from such, Plaintiff fails to demonstrate even a de minimis injury, and Defendant used the least amount of force he could in handcuffing Plaintiff following his arrest. In his complaint, Plaintiff (represented by counsel at the time) alleged a claim for battery, but did not allege a claim for excessive force. In his memorandum in opposition to Defendant's previous motion to dismiss, Plaintiff (at the time represented by counsel) stated that his causes of action were:

> (1) denial of rights under the Fourth Amendment of the United States Constitution, seizure of person; (2) false arrest; (3) malicious prosecution; (4) battery; and (5) violation of First Amendment freedom of speech.

Doc. 25. Plaintiff has not amended his complaint to add such a claim. Further, he does not specifically address any claim for excessive force in his memorandum in opposition to summary judgment.

Even if a claim for excessive force is properly before the Court, Plaintiff fails to show a violation of his constitutional rights. The Supreme Court has held that excessive force claims against law enforcement officers during the course of an arrest should be analyzed under the Fourth Amendment objective reasonableness standard. Scott v. Harris, 550 U.S. 372, 381(2007); Graham v. Connor, 490 U.S. 386, 395 (1989). Thus, courts determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). Reasonableness analysis requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. In considering whether an officer used reasonable force, a court must focus on the moment that the force is employed. Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996). At the summary judgment stage, once the evidence has been viewed in the light most favorable to the nonmovant, the question of whether the officer's actions were reasonable is a question of pure law. Scott, 550 U.S. at 381 n. 8.

Viewing the facts in the light most favorable to Plaintiff does not support the conclusion that the force used against Plaintiff amounted to excessive force. Here, the only alleged excessive force

appears to have been the "grabbing" of Plaintiff to handcuff him. A certain amount of physical coercion or threat thereof is necessary to place an arrestee in handcuffs. See, e.g., Crumley v. St. Paul, 324 F.3d 1003, 1007 (8th Cir.2003) (noting that the right to make an arrest or stop necessarily encompasses the right to use some degree of force to effect it). Plaintiff has not alleged any physical injury as a result of Defendant's actions. For the purposes of an excessive force claim, the nature of the intrusion is measured by the amount of force employed and, accordingly, "[t]he extent of the plaintiff's injuries is also a relevant consideration." Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011)(internal quotation marks omitted). Further, Defendant reported that Plaintiff was cursing at Ms. Simmons in a threatening manner such that there was a perceived threat to the safety of Ms. Simmons and Defendant.

D. First Amendment/Retaliation

Plaintiff alleges that Defendant violated his rights under the First and Fourteenth Amendments to the Constitution as to free speech and the right to criticize the government in that "Defendant punished the Plaintiff for his speech and criticism of Defendant." Complaint, Para. 22. Defendant argues that Plaintiff fails to establish a constitutional claim because he made no allegations of fact in his Complaint nor any in the record that he made any comments against the police officers involved in the incident. Additionally, Defendant argues that if Plaintiff is claiming that his statements against his estranged wife were protected by the First Amendment, it is clear that an exception to Plaintiff's right to express himself under the First Amendment is the "fighting words" exception.

To establish a First Amendment § 1983 retaliation claim, a plaintiff must show that: (1) the plaintiff's right to speak was protected; (2) the defendant's alleged retaliatory action adversely

affected the plaintiff's constitutionally protected speech; and (3) a causal relationship existed between the plaintiff's speech and the defendant's retaliatory action. Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685–86 (4th Cir. 2000).

Plaintiff has also not shown a causal connection between his arrest and any speech by him concerning Defendant. He has not specified what speech or criticism Plaintiff made of Defendant. Bare assertions of retaliation do not establish a claim of constitutional dimension. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Further, in his memorandum in opposition to summary judgment, Plaintiff asserts that it "was all just an act of revenge on the part of my wife for a family dispute that happen[e]d the day before." Plaintiff's Opp. Mem. at 1. Thus, Plaintiff appears to assert that this was an act of revenge or retaliation on the part of his estranged wife, rather than a retaliatory act by Defendant.

E. Emotional Injuries

Plaintiff alleges that he suffered emotional injuries as a result of Defendant's actions. To the extent that Plaintiff is asserting a claim under § 1983 for emotional injuries, his claims fail. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989). The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[7]

---

[7]The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear (continued...)

42 U.S.C. § 1997e(e).

F. Qualified Immunity

Defendant argues that he is entitled to qualified immunity in that all acts taken by him were within the scope of his official duties, he had no knowledge that the acts were illegal and/or unconstitutional, and these acts were not clearly violative of Plaintiff's rights at the time they were taken in that he was operating in good faith and under the belief that the charges made were necessary and mandated by the facts presented to him.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct

[7](...continued)
lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

> constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendant violated any of his clearly established constitutional or statutory rights. Therefore, Defendant is entitled to qualified immunity in his individual capacity.

II. State Law Claims

Plaintiff alleges a claim under South Carolina law for battery. He may also be alleging claims for false arrest/false imprisonment and malicious prosecution under South Carolina law. Defendant contends that he is entitled to summary judgment as to Plaintiff's state law claims because he is immune from liability pursuant to the SCTCA and because these claims are barred by the applicable statute of limitations. Defendant argues that even if these claims are not barred, Plaintiff fails to establish such claims.[8]

A. SCTCA

Defendant argues that he is entitled to employee immunity under the SCTCA (S.C. Code Ann. § 15-78-70(a) and(b)) because Plaintiff has made no allegations that Defendant was acting outside the course and scope of his official duties and because none of the exceptions set forth in § 15-78-70(b)(that the alleged acts or omissions constitute actual fraud, malice, intent to harm, or a crime involving moral turpitude) are applicable. Plaintiff, in his opposition to summary judgment, has not addressed these arguments.

---

[8]The undersigned recommends that summary judgment be granted to Defendant as to Plaintiff's state law claims for the reasons discussed below. Alternatively, as Plaintiff fails to show that Defendant violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

The SCTCA constitutes the exclusive remedy for torts committed by a government employee acting within the scope of his official duties. S.C. Code Ann. § 15-78-70(a). In such a case, the agency or political subdivision for which the employee was acting is the proper party defendant. S.C. Code Ann. § 15-78-70(c). Under the SCTCA, an employee of a governmental entity who commits a tort while acting within the scope of his official duty is immune from liability for that tort; however, an employee is not entitled to immunity if it is proven that the employee's conduct was not within the scope of his official duties or if it constituted "actual malice" or "intent to harm." See S.C. Code Ann. § 15-78-70(b).

Here, Plaintiff has not shown that Defendant was acting outside the course and scope of his official duties, nor has he shown that Defendant's actions constituted malice or intent to harm. Plaintiff fails to show malice as he has not shown lack of probable cause to arrest or prosecute him. Nor has Plaintiff shown any intent to harm him as to Defendant's actions in arresting him. Thus, Defendant is entitled to immunity under the SCTCA.

B. Statute of Limitations

Defendant contends that Plaintiff's state law claims are barred by the applicable statute of limitations under the SCTCA because he did not bring this action within two years after the date the loss was or should have been discovered, and he did not file a verified claim (in which case the statute of limitations would be three years). Plaintiff has not addressed this argument in his memorandum in opposition to summary judgment.

To the extent that Plaintiff's claims are brought pursuant to the SCTCA, such causes of action must be filed within two years after the date the loss was or should have been discovered,

where a claim was not filed within one year of the alleged incident.[9] A claim accrues under the SCTCA when the "the loss was or should have been discovered." S.C. Code Ann. § 15-78-110. A loss should be discovered when the circumstances would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist. Joubert v. South Carolina Dep't of Social Servs., 534 S.E.2d 1, 9 (S.C. Ct. App. 2000). Although Plaintiff was arrested on May 16, 2006, he did not file this action until May 4, 2009, more than two years after his arrest.

C. Battery

Plaintiff claims that Defendant "in a rude and insolent manner" grabbed him and that as a result he suffered physical discomfort, extreme emotional distress and anguish, physical pain, public humiliation and embarrassment, damage to his reputation and standing in the community, and other damages. Complaint at 5. Defendant contends that an officer has a common law privilege to use the force necessary to take an arrestee into custody. He asserts that there is no question of fact from the record that he acted outside the scope of privilege, and therefore he is entitled to summary judgment as a matter of law.

Under South Carolina law, "battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by blow, as any forcible contact is sufficient." Gathers v. Harris Teeter Supermarket, Inc., 317 S.E.2d 748, 754 (S.C.App. 1984). A police officer who uses reasonable force in effectuating a lawful arrest is not liable for battery. Roberts v. City of Forest Acres, 902 F.Supp. 662, 671-72 (D.S.C. 1995).

---

[9]In South Carolina, the statute of limitations is generally three years for claims arising after April 5, 1988. See S.C. Code Ann. § 15-3-530.

However, if a law enforcement officer uses force greater than is reasonably necessary under the circumstances, he may be liable for battery. Id. at 671 n. 2.

Here, Plaintiff merely alleges that Defendant grabbed him in a "rude and insolent" manner. At most, Plaintiff has shown that Defendant used a minimal amount of force to place Plaintiff in handcuffs in effectuating Plaintiff's arrest. Plaintiff fails to show that a force greater than was reasonably necessary under the circumstances was used. Thus, Plaintiff fails to show that Defendant's actions constituted battery under South Carolina law.

D. False Arrest/False Imprisonment

Plaintiff may also be attempting to bring a claim for false arrest/false imprisonment under South Carolina law. Defendant contends that arrest was mandated in this action under the Criminal Domestic Violence Act and Defendant had probable cause to arrest Plaintiff such that the restraint of Plaintiff was lawful.

To prevail on a claim for false arrest or imprisonment, Plaintiff must prove "both that he was deprived of his liberty and that the deprivation was done without lawful justification." Hill v. Gould, No. C.A. 30423388MBS, 2005 WL 3134066, at *3 (D.S.C. Nov. 23, 2005)(citing Jones v. City of Columbia, 389 S.E.2d 662 (S.C. 1990)). "An action for false imprisonment may not be maintained where the plaintiff was arrested by lawful authority." Gist v. Berkeley County Sheriff's Dep't, 521 S.E.2d 163, 165 (S.C.Ct. App. 1999); see also Watkins v. Mobil Oil Corp., 313 S.E.2d 641 (S.C.Ct. App. 1984). "The fundamental issue in determining lawfulness is whether there was probable cause to make the arrest. Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests upon such grounds as would induce an ordinarily prudent and cautious person,

under the circumstances, to believe likewise." Gist, 521 at 165 (citations omitted). As discussed above, Defendant had probable cause to arrest Plaintiff.

E. Malicious Prosecution - SC Law

Plaintiff also may be asserting a claim for malicious prosecution under South Carolina law. Defendant contends that Plaintiff has not shown the existence of malice or a want of probable cause.

Under South Carolina law, the elements of malicious prosecution are:

(1) the institution or continuation of original judicial proceedings, either civil or criminal;
(2) by, or at the instance of the defendants;
(3) termination of such proceedings in plaintiff's favor;
(4) malice in institution of such proceedings;
(5) want of probable cause; and,
(6) resulting injury or damage.

Jordan v. Deese, 452 S.E.2d 838, 879 (S.C. 1995)(citing Gaar v. North Myrtle Beach Realty Co., Inc., 339 S.E.2d 887, 889 (S.C. Ct. App. 1986)). As discussed above, Plaintiff has not shown want of probable cause.

**CONCLUSION**

Based on review of the record, it is recommended that Defendant's motion for summary judgment (Doc. 67) be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

June 27, 2012
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).